# The Chicago, Peoria and St. Louis Railway Company

## *v.*

## Adolphus P. Wolf *et al.*

*Filed at Mt. Vernon March 31, 1891.*

1. EMINENT DOMAIN—*measure of damages—elements considered.* If, by the construction and operation of a railroad over the property of a coal mining company situated near another railway, the switches and side-tracks of such company must be taken up and relaid, in whole or in part, and its tram-way remodeled or rebuilt, and its scales taken up and removed to another place, and like changes made in other parts of its property, such necessary changes are proper matters to be considered by the jury in estimating the damages to the mining company, notwithstanding some of them, as, the tram-way, if rebuilt on a better place, of new materials, and with a double track, may be more valuable and serviceable than as they were before such change.

2. On a proceeding to condemn land of a coal mining company for a right of way by a railway company, it appeared that the construction and operation of the railroad would render it necessary for the mining company, in order to carry on its business, to raise its tram-way about eight feet, or to construct a new one : *Held,* that evidence showing the cost of raising the tram-way to the proper hight, or of constructing a new one in its place, was proper to go to the jury, to enable it to make an intelligent estimate of the damages to the mining property as the necessary and proximate result of the construction and operation of the railway.

3. On a proceeding by a railway company to condemn a right of way over the lands and property of a coal mining company, the court, on the part of the defendants, instructed the jury, "that in estimating the damages to the mine of the defendants they should consider as elements of damages any changes they may believe, from the evidence, to be made necessary by reason of the construction of the said railroad in the building of switches, tram-ways, scales and other improvements connected with the mine, as well as all actual inconveniences and annoyances which the evidence shows will result to the defendants in the operation of their mine, not only for the present, but for the future :" *Held,* that the instruction was not in conflict with the rule, that if, on the whole, the construction and operation of the railway will be a benefit rather than a damage to the property not taken, no damages should be given, nor does it assume as a fact that the construction of the road would inconvenience and annoy the coal company.

4. Same—*personal view by jury—excessive damages.* In a proceeding to condemn land for railroad purposes, in which the jury take a personal view of the premises, the preponderance of the evidence must be strong and clear to justify this court in pronouncing the award of damages excessive, and granting a new trial.

5. Same—*damages for injury to property not taken.* Where a railway company condemns a strip of land for right of way over the land of another, if, on the whole, the construction and operation of the railway will be a benefit rather than a damage to the property not taken, no damages should be given as to such land not sought to be taken. If such remaining land will be of equal or greater value by reason of the construction and operation of the road, no damages should be given for injuries to such property.

6. Practice—*exceptions preserved—rules relaxed.* The record of a case showed an objection to a question propounded to a witness, which was overruled and an exception taken, after which, and in the same paragraph, was the statement, "It is understood that all exceptions to objections are reserved," but there was nothing to indicate that this statement was assented to by opposing counsel or the court: *Held,* that this failed to show that the rules of practice were relaxed, so as to enable the party to preserve his exceptions in any other than the ordinary mode.

7. Same—*on trial no objection or exception to evidence—consideration on appeal.* Where the record fails to show that any objection was made to the introduction of evidence, or that any exception to its admission was preserved, the propriety of its admission can not be considered on appeal or writ of error.

8. Same— *appellant's abstract — presumed accurate.* An appellant's abstract of the record will, as against him, be presumed to be sufficiently full and accurate to present all the errors upon which he relies for a reversal.

Appeal from the Circuit Court of Madison county; the Hon. B. R. Burroughs, Judge, presiding.

Messrs. Morrison & Whitlock, and Messrs. Dale & Bradshaw, for the appellant.

Mr. A. W. Metcalfe, and Messrs. Krome & Hadley, for the appellees.

Mr. Justice Bailey delivered the opinion of the Court:

This was a petition presented to the Judge of the court below, in vacation, by the Chicago, Peoria and St. Louis Railway Company against Adolphus P. Wolf and Fritz W. Wolf, to condemn a strip of land sixty-six feet in width, across certain lands of the defendants, for a right of way upon which to construct the petitioner's railway. By an amendment to the petition the Wolf Coal and Mining Company was afterwards made a party defendant. The strip of land sought to be condemned adjoins the right of way of the Toledo, St. Louis and Kansas City Railroad Company on the west, and lies partly within and partly outside of the corporate limits of the city of Evansville, and embraces a little less than three acres.

Adolphus P. Wolf and Fritz W. Wolf filed their cross-petition setting up and claiming damages to their lands not taken. Said coal company also filed its cross-petition representing that, on one of the tracts of land a part of which is sought to be taken, is situated the coal shaft belonging to said company, together with the buildings, engine house and all appliances for mining, raising and shipping coal in large quantities on said Toledo, St. Louis and Kansas City Railroad and also on the Wabash, St. Louis and Pacific Railway to St. Louis and other markets; that the taking of said strip of land and the construction thereon of the proposed line of railway will damage said coal shaft and mining property in various ways to a large amount, and praying to have such damages assessed and paid to said coal company.

It was stipulated by all the parties to the proceeding that a joint trial should be had as to the three defendants, and that the jury, in rendering their verdict, should award to the three defendants jointly the compensation for the land actually taken for right of way, and also the damages to the contiguous land not taken, and that they should award to said defendants jointly such damages as they should determine

would be sustained by either of them, by reason of the construction and operation of said railway, either to said mine, by reason of any interference with its operations, or to its tracks, buildings, switches and other improvements, it being understood, however, that said stipulation should not be construed as admitting that any contiguous lands would be damaged by the construction or operation of said railway.

At the trial the jury, after hearing the evidence, and after having, at the request of both parties, viewed the premises, returned their verdict by which they found the amount of compensation to be paid to the defendants for the lands actually taken to be $2500, and the damages to said coal mine and its improvements to be $2800, and the court, after overruling the petitioner's motion for a new trial, gave judgment in accordance with said verdict. From that judgment the petitioner has appealed to this court.

The appellant's chief ground of complaint seems to be, that the compensation awarded by the jury for the lands actually taken, and the damages to the property not taken as estimated and fixed by the verdict, are both excessive. As is usual in cases of this character the evidence is quite conflicting. The opinions of the witnesses, both as to the value of the property taken, and as to the extent to which the property not taken will be damaged by the construction and operation of the proposed railway, cover a wide range, some of them being much above and others much below the sums fixed by the verdict. By personally inspecting the premises the jury were enabled and authorized, to some extent at least, to base their estimates upon their own independent judgment. They also saw and heard the witnesses, and were thus better enabled than we can be to judge of their relative credibility, and their inspection of the premises gave them superior facilities for weighing, testing and applying the various theories upon which the witnesses based their respective estimates and opinions. Under these circumstances, the preponderance of the evidence

must be strong and clear to justify us in pronouncing the award of damages excessive. That no such preponderance exists in this case seems to be sufficiently apparent from any fair and impartial examination of the record.

It is insisted that the court erred in admitting evidence of the injury to the tram-way leading from the coal shaft to the coal chutes of the Toledo, St. Louis and Kansas City Railroad, which would result from the construction and operation of the proposed railway, and of the cost of raising said tram-way to the hight which would be thereby rendered necessary, and also the cost of constructing a new tram-way such as should be suitable for the purpose in place of the old one. It is claimed that the existing tram-way was old and out of repair, and that the investigation therefore should have been confined to the question of its then present value, and consequently that the admission of evidence of the cost of building a new tram-way out of new materials, and upon an enlarged plan, had a tendency to mislead or improperly influence the jury.

It is a sufficient answer to the point here made that the evidence above referred to does not seem to have been objected to when offered, and that no exception to its admission seems to have been preserved. The appellant's abstract shows no such objection or exception, and said abstract must, as against the appellant, be deemed to be sufficiently full and accurate to present all the errors upon which it now relies. True we find at one point in the abstract—and the same thing appears in the record—that a question in relation to another subject matter having been put to a witness by counsel for the appellees, an objection was interposed by the appellant's counsel, which was overruled, and an exception was thereupon taken. Immediately following the record of the exception, and in the same paragraph as it appears in the record, is the statement : "It is understood that all exceptions to objections are reserved." These words seem to have been uttered by appellant's counsel, but there is nothing in the record indicating that they were

assented to by the opposing counsel or by the court, or that the appellant's counsel had any right to suppose that the usual rules of practice were relaxed in their favor, so as to enable them to preserve their exceptions in any other than the ordinary mode. But if this were otherwise, no objections to the testimony now complained of seem to have been interposed, and there is nothing therefore to which the "understanding" thus sought to be imposed upon the conduct of the trial can apply.

But we are unable to say that this testimony, if it had been seasonably objected to, should have been excluded. It appears that the coal company had, in connection with its coal mine, a tram-way running from its coal shaft to the coal chutes of the other railroad company, and was and for several years had been using said tram-way for the purpose of conveying coal from said shaft to and loading it upon the cars and engines of said railroad company. The evidence tends to show that said tram-way was sufficient for all the then present requirements of the coal company's business, and also that such tram-way was absolutely necessary to the proper operation of said mine and the shipment of coal therefrom. The construction and operation of the appellant's railway will make it necessary to raise said tram-way about eight feet, or to tear it down and erect another in its stead. One of these things the coal company will be compelled to do in order to restore its mine to its present state of efficiency. We think it clear then, that for the purpose of making an intelligent estimate of the damages to the mining property which will be the necessary and proximate result of the construction and operation of the railway, the cost of raising the present tram-way to the proper hight, or of constructing a new one in its place, was a proper matter for the consideration of the jury.

It is insisted that the court erred in giving to the jury, at the instance of the appellees, the following instruction:

"The court instructs the jury that, in estimating the damages to the mine of defendants, they should consider, as elements of damage, any changes they may believe, from the evidence, to be made necessary, by reason of the construction of the said railroad, in the building of switches, tram-ways, scales and other improvements connected with the mine, as well as all actual inconvenience and annoyance which the evidence shows will result to the defendants in the operation of their mine, not only for the present but for the future."

It is said that this instruction assumes as a fact, that each of the several changes in said mining property and its appurtenances made necessary by the construction of said railway will constitute an element of damage, while, as is claimed, some of them may, in their final results, be of essential benefit to said mining property. We are unable to see any force in the objection. If by reason of the construction of the railway, the defendants' switches and side-tracks must be taken up and relaid in whole or in part, their tram-way remodeled or rebuilt, their scales taken up and removed to another place, and like changes made in other parts of their property, all involving the expenditure of money, as the evidence seems to show will be the case, there can be no doubt that such changes are proper matters to be taken into consideration by the jury in the estimation of damages. It may be that some of these, as for instance, the tram-way, if rebuilt upon a better plan, of new materials and with a double track, may be more valuable and more serviceable than now, but that makes it none the less true that the defendants have a right to have such changes considered by the jury. Said instruction does not seem to be at all in conflict with the rule that if on the whole, the construction and operation of said railway will be a benefit rather than a damage to the property not taken, no damages should be given, and in conformity with that rule, the jury were instructed, at the instance of the appellant, in substance, that if the contiguous property will be of equal or greater value by

reason of the construction and operation of said railway, no damages should be given for injuries to said property.

Again, it is said that said instruction assumes as a fact that the construction of said railway will inconvenience and annoy the coal company. We think it not fairly subject to that criticism. It merely directs the jury, in estimating damages, to consider all inconvenience or annoyance established by the evidence, but could not have been understood by the jury as intimating an opinion that any actual inconvenience or annoyance was in fact shown.

Error is assigned upon the refusal of the court to give to the jury certain instructions asked on behalf of the appellant. These instructions, so far as they seem to announce correct propositions of law, were given, in substance, in other instructions, and it was not error therefore to refuse them.

We find nothing in the record furnishing a sufficient ground for disturbing the judgment of the Circuit Court, and said judgment will therefore be affirmed.

*Judgment affirmed.*