**St. Louis, Alton & Terre Haute Railroad Company v. Daniel Holman.**

1. FELLOW-SERVANTS—*Question of Fact.*—Whether two or more workmen are fellow-servants is ordinarily a question of fact to be determined by the jury.

2. SAME—*Who Are Not—A Foreman and Those Under Him.*—The fact that an intermediate superior may intervene between the foreman and the principal does not necessarily make the foreman a fellow-servant of those under him.

3. SAME—*The General Rule.*—In determining who are fellow-servants, the first and most important question is, when the foreman commands,

must the workmen obey, or be discharged by the foreman or by some other authority to whom the foreman may report the act of disobedience. In such case the effect is the same, whether the foreman discharges the workmen at once or only after consultation with his superior. The procuring cause of the discharge is disobedience to the foreman, which is taken by the railroad authorities as disobedience to the principal.

4. SAME—*The Attitude of the Foreman.*—In exercising the power of directing the movements of those under him, the foreman does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority and which is not manifestly unreasonable, those under his charge are bound to obey at the peril of losing their situations. Such commands are, in contemplation of law, the commands of the company, and it is held responsible for the consequences.

5. SAME—*Acts of a Fellow-Servant or Principal.*—The question in a given case as to whether the acts were those of a fellow-servant or of the principal is one of fact to be determined by the jury from the evidence.

6. NEGLIGENCE—*What is.*—It is negligence to leave a car standing upon a side-track in a position where it may be caught and impelled forward by a leaning car on a switch-track.

7. INSTRUCTIONS—*Due Care and Caution.*—It is error to give an instruction which omits the element of the plaintiff's due care and caution. But where the instructions upon both sides require the plaintiff to prove all the allegations of the declaration and the declaration contains an express averment of due care and caution on the part of the plaintiff the error is cured.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Perry County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1894, and affirmed. Opinion filed June 23, 1894.

The opinion states the case.

APPELLANT'S BRIEF, R. W. S. WHEATLEY, ATTORNEY.

The plaintiff must prove by a preponderance of the evidence, the specific acts of negligence alleged in his declaration. City of Joliet v. Henry, 11 Brad. 154; Ayer v. City of Chicago, 111 Ill. 406; C., B. & Q. Ry. v. Bell, 112 Ill. 360.

A common master is not liable for an injury to an employe caused by the negligence of a fellow-servant. C. & A. Ry. v. Murphy, 53 Ill. 336; Valetz v. O. & M. Ry., 85 Ill. 500; I. C. R. R. v. Keen, 72 Ill. 512; I. C. R. R. v. Cox, 21

Ill. 20; C. & A. Ry. v. Keefe, 47 Ill. 108; C. & E. I. Ry. v. Geary, 110 Ill. 383.

No distinction arises as to the liability of the master from the different grades or ranks of the servants employed. Wharton on Neg., Sec. 229–40.

The plaintiff can not recover for injuries resulting from accident, which was one of the risks and hazards incident to the particular employment. I. C. R. R. v. Cox, 21 Ill. 20; I., B. & W. Ry. v. Flannigan, 77 Ill. 365; T. W. & W. Ry. v. Black, 88 Ill. 112.

Risks of injury from ordinary perils of the service are assumed by the employe, especially when the dangers are not hidden. I., B. & W. Ry. v. Flannigan, 77 Ill. 365; C. & A. Ry. v. Monroe, 85 Ill. 25; A., T. & S. F. R. R. v. Alsdurf, 47 Ill. App. 200; Gartland v. T., W. & W. Ry., 67 Ill. 498; T. W. & W. R. Y. v. Durkin, 76 Ill. 395; Clark v. C., B. & Q. Ry., 92 Ill. 43.

The plaintiff's instructions omit entirely the requirement of due care and caution on the part of the plaintiff. P. & P. U. Ry. v. O'Brien, 18 Brad. 28; C., B. & Q. Ry. v. Harwood, 80 Ill. 88; C. & N. W. Ry. v. Dimmick, 96 Ill. 42; W. St. L. P. Ry. v. Chackler, 105 Ill. 364; C. & A. Ry. v. Mock, 72 Ill. 141; City of Peoria v. Simpson, 110 Ill. 294; W. S. & P. Ry. v. Rector, 104 Ill. 296; Sanford v. Miller, 19 Brad. 536.

HAWKINS & HAWKINS and W. A. SCHWARTZ, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

At 4 or 5 o'clock in the afternoon of January 28, 1891, appellee, who had been working on an engine tank at appellant's round-house at Pinkneyville, and had completed that task, was commanded by one Wilkinson to make certain repairs on a flat-car then standing on one of appellant's repair tracks. Wilkinson's instructions were specific, both as to the car, the number of which was given to ap-

pellee, and as to the work to be done, which was to "jack up" the car, and remove the old, and put in a new center-plate.

The repair track in question, which ran in an easterly and westerly direction, was connected with a switch-track at the west end, and was used for the sole purpose of holding cars which were in need of repairs. Such cars were put on this track in the night time by the night switchmen, and were "placed" in the morning under the superintendence of Wilkinson before the repairers went to work on the damaged cars.

In obedience to Wilkinson's instructions, appellee undertook to remove the damaged center-plate from the flat-car on which he had been ordered to work. He raised the car and left it resting upon the jacks. He removed the trucks, which was necessary to enable him to perform his task, and began to take the nut from a bolt which fastened the center plate to the body of the car. While he was in this position under the car, conductor Gray, who was making up a freight train, backed in from the west upon the adjacent switch track with an engine and five cars. The first two cars cleared those on the repair track, but the third caught about two inches of the roof of the west car on the repair track and forced that car to the east against the second car, and this against the flat-car on which appellee was working. The jacks were knocked from their position and the car fell, whereby appellee was seriously injured. The verdict for $3,000 is certainly not excessive, if any recovery would be justified by the evidence.

The evidence shows that the accident was caused by the leaning of the colliding cars toward each other. Conductor Gray testifies that if the car on the repair track had been placed ten feet further east the collision would not have occurred. A leaning car is not *rara avis;* there were two of them here on this occasion, and it was negligence to leave such a car so close to the switch track as to bring it into contact with another car which might vary slightly from the perpendicular in passing.

The evidence shows that there were ten or twelve men working in the repair yards, and that Wilkinson was their foreman. He was sometimes called the master car-builder; he gave the men under him instructions concerning their work and they were required to obey his commands; he superintended the placing of cars on the repair track; it was his business, as conductor Gray testified, to know that the cars on the repair track were absolutely clear of cars passing on the other tracks; it was proved that he had hired employes in the repair yards, and had discharged at least one of them; also that one of his predecessors had hired appellee when he was employed in this branch of the service. The workmen regarded Wilkinson, and were justified in regarding him, as a vice-principal, whose command was the will of the master, and therefore to be obeyed without remonstrance.

Evidence was introduced, however, which tended to show that Wilkinson was under a general foreman at the yards, to whom he was responsible, and to whom he referred all questions relative to the employment and discharge of workmen in the repair yards. Hence it is contended that Wilkinson was not a vice-principal to the men under him, but merely their fellow-servant, owing, with them, obedience to this general foreman.

It should be remembered that it is ordinarily a question of fact to be determined by the jury whether or not two foremen are fellow-servants. The Pullman Palace Car Company v. Laack, 143 Ill. 242. Also, that the fact an intermediate superior may intervene between the foreman and the principal does not necessarily make the foreman a fellow-servant of those under him. C. & A. R. R. Co. v. May, 108 Ill. 288. Every case must be decided, in a measure, upon its own circumstances. The first and most important question is, when the foreman commands, must the workman obey, or be discharged by the foreman or by some other authority to whom the foreman may report the act of disobedience? In such case the effect is the same whether the foreman discharges the workman at once, or only

after consultation with his own superior. In either case the procuring cause of the discharge is disobedience to the foreman, which is taken by the railroad authorities as disobedience to the principal. The attitude of the foreman in such a case is forcibly expressed in the following extract from the opinion in the May case: "In exercising this power (that is, the power of directing the movements of those under him) he (the foreman) does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey, at the peril of losing their situations, and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences."

We conclude that the jury were justified in finding from the evidence that Wilkinson had charge and control of the workmen, and authority to govern and direct their movements in the branch of the principal's business in which they were engaged, and that therefore his acts and directions were the acts and directions of appellants. W., St. L. & P. Ry. Co. v. Hawk, 121 Ill. 259; Libby, McNeil & Libby v. Scherman, 146 Ill. 540; Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573. The jury were also justified in finding that Wilkinson was negligent in leaving the leaning car in a position where it might be caught and impelled forward by a leaning car on the switch track, and that this negligence, followed by the command to work on the flat car, was the negligence of appellant, and caused the injury sued for.

As another reason for the reversal of the judgment, it is urged that the requirement of due care and caution on the part of appellee is omitted from his instructions.

Appellee's first instruction, like appellant's second, requires appellee to prove all the allegations of his declaration, or to prove his case as alleged in his declaration. Every count of the declaration contains an express averment of due care and caution on the part of appellee. By this indi-

rect method, which, it must be admitted, is not entirely satisfactory, the jury are told that appellee can not recover unless he was in the exercise of due care and caution when he was hurt.

But it is to be observed that appellant did not ask the court to give any instruction as to negligence on the part of appellee, but tried the case upon the theory that appellee was not guilty of negligence.

An examination of the record discloses no negligence on the part of appellee. His work was done in a proper manner, and in accordance with, and in obedience to, the command of his superior. Hence, it was not error to give appellee's third instruction which makes no mention of due care and caution on his part.

It is contended that there is a variance between the evidence and declaration, but inasmuch as the declaration has not been abstracted, we decline to consider the question. Joliet Street Ry. Co. v. McCarthy, 42 Ill. App. 49; McGillis et al. v. Anderson, 44 Id. 601; C., P. & St. L. Ry. Co. v. Wolf et al., 137 Ill. 360.

We perceive no error in the record, and the judgment is therefore affirmed.