## Henry Baier and William Ohlendorf, co-partners, etc., v. Fred Selke.

### Gen. No. 4,230.

1. ABSTRACT—*what, should show.* The abstract filed upon appeal should be sufficiently full to present every error and exception relied upon, and the court in its discretion may decline to look to the record to supply such deficiencies. Omissions of this kind cannot be obviated by a reply brief.

2. VICE-PRINCIPAL—*when question as to whether a, in a particular instance was a fellow-servant of the plaintiff, is one of fact.* Where the defendant has requested and obtained instructions submitting a question as to whether a foreman with reference to a particular matter was acting in his capacity as a vice-principal or as a fellow-servant, as one of fact, such question cannot be urged upon appeal as one of law.

3. VICE-PRINCIPAL—*when instruction as to, is proper.* An instruction is proper which tells the jury that if a particular man was employed by the defendants and given authority to hire, discharge and direct servants, then *while exercising such authority,* such man was not a fel-

low-servant, and his acts while exercising such authority and control were the acts of the defendants.

4. MENTAL ANGUISH—*when proof of, sufficient.* In this case the court sets out the evidence upon this question and holds that the same establishes proof of mental anguish upon which an allowance of damages may be predicated.

Action on the case for personal injuries. Appeal from the Circuit Court of Stephenson County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

PATTISON & MITCHELL, for appellants.

R. R. TIFFANY and ECKERT & McDONALD, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Baier and Ohlendorf operated a brewery at Freeport. On one of the upper floors of their brew house was a rice tub in which rice was cooked for purposes connected with brewing. It was six or seven feet high, and six feet wide. An upright shaft came up from a lower floor and passed through the center of the rice tub. This shaft had attached to it in the tub several iron arms or shovels, some extending part way and some almost all the way from the shaft to the side of the tub. These arms revolved with the shaft. Two fixed cross-bars extended through the tub to hold the sides from spreading. There was a steam pipe near the bottom of the tub. This rice tub shaft was connected with the main shaft by a clutch on the lower floor, and was kept revolving while rice was being cooked, to prevent the rice from burning or cooking unequally in different parts of the tub. The rice tub was covered, and had a door in the top by which a person could enter it. In cooking, rice adhered to the sides and bars and arms, and it was necessary to clean the tub each time after it had been used. The person who cleaned it had to enter the tub and scrub the inside thoroughly, and the operation took considerable time.

Weber was foreman. Selke was an employee. On the morning of June 18, 1902, the brewery was short of help, and Weber sent Selke, who was working in the cellar, to

the brew house to clean out the rice tub. It appears that the clutch connecting the rice tub shaft with the main shaft was not disconnected, as it should have been by some one. While Selke was at work in the rice tub, Weber threw in the clutch connecting the main shaft with the engine. This started the rice tub shaft and set its arms to revolving. Selke gave a loud outcry and was heard, and the machinery was very quickly stopped.. Selke was then taken out of the tub. His body and head were lacerated and bruised, his body was covered with blood, some of his teeth were broken and others loosened, and his clothing was badly torn. He claimed his kidneys were injured. His escape from instant death was marvelous. He was removed to a hospital, and was treated for his injuries; and was incapacitated for labor for a long time. He brought this suit against his employers to recover damages for these injuries. Plaintiff filed an appropriate declaration consisting of two original and two additional counts, alleging he was in the exercise of due care, and charging in various ways negligence of defendants in permitting said rice tub machinery to be or become connected with the main machinery, without warning plaintiff, and in starting said machinery while plaintiff was in the tub, and in permitting plaintiff to work at that place without instructing him as to the care and caution required, plaintiff being, it was alleged, unskilled and inexperienced in the devices by which said rice tub machinery was operated, etc. Defendants filed the general issue and special pleas. A demurrer was sustained to the special pleas, and that action is not assigned for error. Upon a jury trial plaintiff had a verdict for $1,000. Motions for a new trial and in arrest of judgment were interposed by defendants, and denied. Plaintiff had judgment and defendants appeal.

It is argued the court erred in rulings upon objections to the introduction of testimony. The abstract does not show that any objections were made to the introduction of testimony, that the court made any rulings upon any objections of that character, or that any exceptions were taken

by defendants to any such rulings. The rules of this court require a party bringing a cause here to file abstracts sufficient fully to present every error and exception relied upon. Like rules exist also in the Supreme Court and in the other Appellate Courts of this state, and they have often been enforced. See Traeger v. Mutual Building Association, 189 Ill. 314; Douglass v. Miller, 102 Ill. App. 345; Marsh v. Jones, 106 Ill. App. 577; Home Guardian of. America v. Holt, 108 Ill. App. 578, and cases cited in those opinions. In C. P. & St. L. Ry. Co. v. Wolf, 137 Ill. 360, speaking of an alleged error in the admission of testimony, the court said: "The appellant's abstract shows no such objection or exception, and said abstract must, as against the appellant, be deemed to be sufficiently full and accurate to present all the errors upon which it now relies." Unless we abandon these reasonable and necessary rules, we must hold that the abstract in this case presents no question concerning the rulings of the court upon the admission of testimony. This cannot be obviated by the reply brief. Appellants cannot make a case in the reply brief not presented by the abstract.

At the close of all the evidence defendants requested the court to give an instruction directing a verdict for defendants. This the court refused, and defendants excepted. This presents the question whether the testimony fairly tended to make a case for plaintiff. Plaintiff introduced proof tending to show that he had never cleaned or been in a rice tub before, though he had cleaned a mash tub; that Weber directed him to go and clean the rice tub, and told him everything was ready, and directed him to hurry; that plaintiff went and began cleaning the tub on the outside; that Weber came and said to him: "Don't you make hocus pocus outside; go right inside; everything is ready;" that plaintiff looked in the tub, and Weber said: "Just go in; that don't bite you;" that Weber told him everything was ready and not to be afraid, and said: "The machinery don't start up there;" that Weber said everything was all right in the rice tub. Plaintiff also introduced proof that he did not know how the rice tub or any

machinery in the brew house was connected with the main
shaft, and was not acquainted with the clutches in the
brew house; that his knowledge of the machinery was con-
fined to another part of the premises called the malt house;
that he did not know where the clutch to the rice tub shaft
was; and that in going from the cellar to the rice tub that
morning he went by a different way from that described
by defendant's witnesses as leading by the clutch connect-
ing the rice tub shaft with the main shaft.    Plaintiff also
showed that Weber was defendant's foreman, with power
to hire and discharge men and give them orders, and that
Weber turned on the clutch connecting the main shaft with
the engine, and that that act set the rice tub machinery in
motion and injured plaintiff.    We see no force in the
argument that though Weber was a foreman when he sent
plaintiff to the rice tub, he was a fellow-servant when he
turned on the power and started the machinery in the rice
tub.  It may well be that setting the machinery in motion
to do the work of the plant was an act of the principal, an
act of control, and equally so whether Weber turned the
lever or whether he sent some one else with orders to do it.
In any event under the instructions requested and obtained
by defendant, this was a question of fact for the jury.    C.
& E. I. R. R. Co. v. Driscoll, 207 Ill. 9.    In our judgment
the proof above recited tended to make a case for plaintiff,
and the court therefore properly refused to direct a verdict
for defendants.

Defendants introduced proof contradicting parts of the
case made by plaintiff.    Weber denied that he told plaint-
tiff everything was all right, that the machinery would not
move, etc.    Defendants also introduced proof that plaintiff
had cleaned the rice tub before, and that on that morning
in going from the cellar to the rice tub he took the route
which went by the rice tub clutch, so that he should have
known it was connected with the main shaft; and also that
a man cleaning the rice tub could move the machinery
therein if it was disconnected, but that the machinery
would be rigid and could not be moved if it was connected

with the main shaft; so that if plaintiff was accustomed to cleaning the rice tub he should have been warned by the rigidity of the shaft that it was connected with the main shaft, and that it was unsafe to work in the tub till it was disconnected. If, however, he had never worked in the rice tub, or but once or twice, that inference might not arise or would be very slight. These were questions of fact upon which there was serious conflict in the proof. The main question in the case was whether, under all the circumstances as they actually occurred, plaintiff ought to have personally disconnected the rice tub clutch or ascertained it was disconnected, before working in the tub, or whether plaintiff was so ignorant of the devices used there that he was not bound to inquire but had a right to assume his masters had exercised due care to furnish him a reasonably safe place in which to do that work; or, still further, whether he received such urging and such assurances of safety from the foreman as justified him in going at the work in reliance upon them without further inquiry. The evidence would not warrant us in disturbing the conclusions reached by the jury and approved by the trial judge upon these questions of fact.

It is argued the court erred in giving the first and fifth instructions requested by plaintiff, because they ignored the question whether Weber was a fellow-servant of plaintiff when he performed the act of turning on the clutch connecting the main shaft with the engine. These instructions did not say defendants were liable for all acts by Weber. The first said that if Weber was employed by defendants and given authority to hire, discharge and direct servants, then *while exercising such authority* Weber was not a fellow-servant, and his acts while exercising such authority and control were the acts of defendants. This instruction was clearly proper, for Weber had directed plaintiff to clean the tub, and there was proof he had ordered him to get into the tub, and at the same time assured him it was safe and the machinery would not move. The fifth was of like tenor, and to the further effect that if plaintiff, while exercising

ordinary care for his own safety, was injured by the negligence of the foreman *while he was acting as such foreman*, then the foreman's negligence was the negligence of defendants. We think these instructions were properly qualified. But if they omitted any element which should have been stated, the court gave twenty-six instructions requested by defendants, and two of them, numbered 24 and 25, stated very fully the law on this subject as claimed by defendants, so that the jury could not have been misled. It is worthy of notice that by these instructions defendants induced the court to leave it to the jury to decide as a question of fact whether when Weber turned on the clutch he was acting as a representative of his employers or was merely performing the duties of a fellow-servant with plaintiff, so that defendants cannot now be heard to say that the facts on this subject are undisputed, and that the court should hold as a matter of law that Weber was not a vice-principal when he turned the clutch, but a fellow-servant with plaintiff.

Complaint is also made of plaintiff's *fourth instruction* because it allowed the jury, in fixing the damages if they found for plaintiff, to take into consideration plaintiff's suffering in body and mind, if any, resulting from such injuries, the ground of objection being that there is no proof of mental suffering by plaintiff. The additional counts charged plaintiff suffered great pain and anguish. This is abundantly proved. The proof is that since his injury he suffers from dizziness; that when he bends down everything gets black and blue; that he has not had sound rest since this injury; that he could not lay on his back for the pain; that his legs, fingers and arms still pain him; that when he stoops over and rises up he sees double, that is, sees two objects where there is but one; that where he was wounded on the head he still has a feeling as if some one were filing and pounding and squeezing it together, and sticking a pin through his head. A physician testified some of these symptoms indicated an irritation of the brain just underneath the wound. Another physician testified plaintiff complained to him of headaches, which in the judgment of

the witness, were caused by this injury; and that plaintiff's dizziness indicated an injury to the brain from concussion. It is not easy to conceive of severe physical pain without mental suffering. An unconscious person does not suffer pain. It is by means of the mind that we have that perception of suffering called pain. The instruction in question did not permit the jury to consider plaintiff's suffering in mind unless it was shown by the evidence and resulted from these injuries. If the word "mind" might well have been omitted from the instruction, yet the damages awarded are so moderate that we cannot believe that the use of that word increased them.

In our judgment the abstract does not disclose any reversible error. The judgment is therefore affirmed.

*Affirmed.*