THE OTIS ELEVATOR COMPANY, Appellee, *vs.* THE CITY
OF CHICAGO, Appellant.

*Opinion filed April 23, 1914—Rehearing denied June 3, 1914.*

1. CONSTITUTIONAL LAW—*purpose of provision against damaging private property without compensation.* The provision of the constitution of 1870 that private property shall not be taken *or damaged* for public use without just compensation was intended to give a remedy in certain cases of hardship not within the provision of the constitution of 1848, which authorized compensation only where there was an actual physical invasion of the property.

2. SAME—*rule as to right of recovery for damage to property.* The provision of the constitution of 1870 against damaging private property for public use without just compensation was not intended to reach every possible injury that might be occasioned by a public improvement, but is limited to cases where there has been a direct physical disturbance of a right, either public or private, which the property owner enjoys in connection with his property and which gives it additional value, by reason of which disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.

3. SAME—*constitution affords a remedy for damages from an act done with legislative authority.* The provision of the constitution of 1870 against damaging private property for public use was intended to afford a remedy for damages resulting from an act done with legislative authority, where, in the absence of such authority, there would have been a right of action at common law. (*Rigney* v. *City of Chicago,* 102 Ill. 64, approved.)

4. MUNICIPAL CORPORATIONS—*purpose of agreement that a city will pay damages caused by track elevation.* A contract whereby a city, for the purpose of securing the elevation of railroad tracks, agrees with the railroad company to assume and pay such damages as the railroad company might become liable for by reason of such elevation, merely determines, as between the city and the company, who shall pay damages recoverable by law, and before a property owner can establish a liability against the city under such contract he must allege facts which would render the railroad company liable.

5. SAME—*when city is not liable for destruction of switch-track connection at grade.* An agreement by a city with a railroad company to pay all damages caused by the elevation of the railroad tracks does not authorize a property owner to recover damages from the city for depreciation in the value of his property due to the destruction, by the elevation of the railroad tracks, of a grade

switch-track connection with his property, where the railroad company was under no legal obligation, by contract or by virtue of any statute, to maintain such connection.

6. SAME—*effect of rule that measure of damages in action on the case is the same as in condemnation.* In a suit for damages to private property after a public work has been constructed the measure of damages and rules of evidence are the same as in a condemnation proceeding; but this does not mean that all depreciation of property on account of a public improvement must be compensated for, either in condemnation proceedings or .in an action on the case for damages.

7. SAME—*when doctrine of equitable estoppel against city does not apply.* So far as the elevation of railroad tracks is an exercise by a city of its police power no equitable estoppel can operate to prevent its exercise; nor does the mere fact that a property owner constructs improvements on his property with reference to an existing switch-track connection, at grade, with the tracks of à railroad company, operate to give a right against the city to have the railroad tracks maintained at the existing grade.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, (LEE D. MATHIAS, P. W. SULLIVAN, and WILLIAM DILLON, of counsel,) for appellant.

DANIEL BYRNES, FRANKLIN A. DENISON, and JOHN L. McINERNEY, (PAUL BROWN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, the Otis Elevator Company, brought this action on the case in the circuit court of Cook county against the appellant, the city of Chicago, to recover damages to the property of the appellee in the city of Chicago caused by the elevation of the road-bed and tracks of the Chicago Terminal Transfer Railroad Company (now known as the Baltimore and Ohio Chicago Terminal Railroad Company) in pursuance of an ordinance of the city requiring such elevation. The appellant demurred to the

amended declaration, and the demurrer being overruled it stood by the demurrer, and a default and interlocutory judgment were entered against it, in favor of the appellee, for the amount of the damages to be ascertained. The damages were assessed by a jury at $22,500. Motions were thereupon made to set aside the verdict and in arrest of judgment, both of which were overruled and final judgment was entered in favor of the appellee for the amount of the verdict and costs. The determination of the question raised by the demurrer involved the construction of the constitution as to whether the appellant was liable for con-. sequential damages of the character suffered by the appellee on account of the elevation of the railroad near its property, therefore an appeal to this court was allowed.

The material facts admitted by the demurrer are as follows: On July 7, 1902, the Chicago Terminal Transfer Railroad Company owned and operated railroad tracks running east and west upon its right of way in the city of Chicago. North of the right of way and property of the railroad company, and adjoining it, there was a public alley 16 feet wide. Laflin street extended north from the right of way, and the plaintiff was in possession of two pieces of real estate lying on opposite sides of Laflin street and adjoining the alley on the north. The real estate of the plaintiff west of Laflin street had a frontage of 125 feet on that street and 385 feet on the alley and was improved with a brick building used for a foundry and manufacturing heavy machinery. The tract on the east side of Laflin street had a frontage of 125 feet on the street and 360 feet on the alley and was improved with a brick building used for foundry purposes. The railroad company's right of way and the premises of the plaintiff were at or near the same level, and the buildings were constructed with reference to the existing grade of the railroad and were used to carry on an extensive business of shipping by rail. The railroad company, under a permit issued by the com-

missioner of public works 'of the city of Chicago, had constructed and maintained a switch track connecting with the railroad west of Laflin street, crossing the alley and entering the premises of the plaintiff about 75 feet west of the street, extending from thence across Laflin street, in an easterly direction, into the building east of Laflin street, running through the building and· connecting with the railroad tracks at the east end of the plaintiff's property. The switch was constructed for use in connection with the business of the plaintiff, for the purpose of receiving and shipping property by rail. At the date above mentioned an ordinance was passed by the defendant requiring the Chicago Terminal Transfer Railroad Company and other railroad companies to elevate their tracks, and on April 7, 1909, in pursuance of that ordinance and amendatory ordinances, said railroad company proceeded to elevate the road-bed and tracks, and constructed an embankment of stone, gravel and other materials permanently and of the heighth of 20 feet, cutting off the switch connection and the possibility of further switch connection on a level with the plaintiff's premises, as it had previously existed. The ordinance provided for acceptances by the railroad companies, and also provided that they should not be required to assume or pay any damages to adjacent property caused by the passage and enforcement of the ordinance, and the defendant agreed that all such damages, if there were any, should be paid by it. The Chicago Terminal Transfer Railroad Company accepted the ordinance and elevated its road-bed and tracks under the agreement contained in it. As a consequence of the elevation the property of the plaintiff was depreciated in its fair cash market value. Since the elevation of the tracks the alley has been vacated by an ordinance passed on June 13, 1910.

The property of the plaintiff was separated from the right of way of the railroad company by the alley and there was no direct physical invasion of the premises, but the

market value of the premises was depreciated by cutting
off the switch track connection and depriving the plaintiff
of the benefits to its property accruing from such con-
nection. The right to recover the amount of the deprecia-
tion in the market value of the premises resulting from the
disconnection of the switch track is claimed under section
13 of article 2 of the constitution, which reads: "Private
property shall not be taken or damaged for public use with-
out just compensation." That provision of the constitu-
tion was construed, and a rule was established which has
since been adhered to, in the case of *Rigney* v. *City of
Chicago,* 102 Ill. 64. It was there held that the provision
gave Rigney a right to recover damages to his property
fronting on Kinzie street by reason of the construction by
the city of a viaduct along Halsted street and across Hal-
sted and Kinzie streets at their intersection, cutting off all
connection with Halsted street by way of Kinzie street ex-
cept by means of a pair of stairs at the intersection, and
the grounds of the decision were very fully and carefully
stated. There was a historical review of the rules of law
and of decisions, and the reasoning of the opinion was as
follows: By the common law, where a thing not *malum
in se* was authorized to be done by a valid act of the legis-
lature and was performed with due care and skill in con-
formity with the provisions of the act, its performance
could not be made the ground of an action, however much
one might be injured by it, and in all such cases the stat-
ute afforded a complete indemnity, notwithstanding the fact
that the injury complained of would in the absence of the
statute be actionable by the common law. With a view
of preventing hardships and abuses resulting from that rule
the framers of the constitution of 1848 inserted the provi-
sion therein contained, that property should not be taken
or applied to public use without just compensation. This
court, giving a liberal construction to that provision, held
in various cases that any direct physical injury to the prop-

erty of a private person, such as overflowing his land and similar injuries by which he was substantially deprived of its beneficial use and enjoyment, was a taking of his property to the extent of the damage thereby occasioned. That construction, making actual physical invasion of property the test in every case, excluded many cases of great hardship, as in the case of Rigney, where there was no actual physical injury to the property but the approaches were so cut off and destroyed as to leave it almost valueless. The present constitution, doubtless with a view of giving greater security to private rights by affording relief in such cases of hardship, added the provision that private property shall not be damaged for public use without just compensation. In considering what additional classes of cases the framers of the present constitution intended to provide for, the rule adopted was, that it was not the intention to reach every possible injury that might be occasioned by a public improvement, and it was held that to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. The foundation of the rule and the reason for it were stated in these words: "In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law." The doctrine of the *Rigney case* has not been modified, limited, extended or departed from in any degree.

In the case of *South Park Comrs.* v. *Ayer,* 237 Ill. 211, the South Park Commissioners sought to condemn for park

purposes half a block in the city of Chicago of which the appellant owned the south two-thirds, and the question submitted to the jury was the market value of the appellant's property. It was well adapted for a building for warehouse and manufacturing purposes, and the question whether the owner would be able to obtain switching connection with an adjoining railroad across an alley materially affected such market value. The owner in offering his property for sale, and a purchaser in buying it, would naturally take into account the probability of such connection in making use of the property, and it was held that the owner had a right to offer evidence on that subject for the consideration of the jury in determining market value.

Again, in *Chicago and Western Indiana Railroad Co. v. Heidenreich*, 254 Ill. 231, the railroad company sought to take lots practically surrounded with railroad tracks and adapted to warehouse purposes. The value of the property for the purpose for which it was adapted was materially affected by the probability of securing switch connection with one or more of the railroads, without which the property would be worth little or nothing for such purposes. It was held proper to take into account the chances of securing the connection and devoting the property to its most valuable use.

In *City of Chicago v. Walker*, 251 Ill. 629, the city instituted a proceeding to condemn for the opening of a street the east 33 feet of block 9, which was the property of the Illinois Vinegar Manufacturing Company. The vinegar company owned an adjoining vinegar factory, and offered to prove that for a valuable consideration, consisting of the right of the Chicago, Burlington and Quincy Railroad Company to extend the foundations of its retaining walls under the surface of the vinegar company's land, that company should have the right to a switch track connecting the railroad with its loading platform, and that the arrangement was consummated by the construction of the retain-

ing walls and the switch track. The vinegar company had a right to have the switch maintained and to have the use of it in connection with its factory, and the opening of the street would destroy the switch, and if it should be re-built and elevated, changes in the construction and operation of the vinegar factory would be required. It is manifest that the vinegar company could not be deprived of its property right without just compensation.

In two of the above cases the question was the market value of the property taken in view of its adaptability to certain uses, and in the other the question was the right to compensation for interference with and destruction of vested property rights. Neither of them gives any countenance to an argument that the decision in the *Rigney case* has been affected in any way. In this case the defendant, for the purpose of securing the elevation of railroad tracks in the interest of the public safety and convenience, agreed with the railroad companies to assume and pay such damages as the railroad companies might become liable for by reason of such elevation. The purpose of the agreement was not to protect property owners and secure to them their damages, but to determine, as between the city and the railroad company elevating its tracks, who should pay the damages recoverable by law occasioned by the act and to relieve the railroad company from their payment. (*Chicago Flour Co.* v. *City of Chicago,* 243 Ill. 268.) To establish a liability against the defendant under the contract it would be necessary to allege facts which would render the railroad company liable to the plaintiff, and that was the situation in *City of Chicago* v. *Jackson,* 196 Ill. 496. In that case a recovery was neither sought nor allowed because the railroad tracks had been elevated or for any consequences of the elevation. The declaration averred that Jackson's property fronted on West Fortieth street on a level with the street and with direct and convenient access; that the city wrongfully excavated, or caused to be exca-

vated, the street in front of and adjacent to his premises to a great depth below the grade as it had existed, and that by means thereof the free and convenient access to his premises had been entirely destroyed and cut off and the reasonable enjoyment and use of the same seriously interfered with. There had been an agreement for the elevation of the tracks, in which the city assumed liability for damages to adjacent property in consequence of change of grade of streets or the performance by the railroad of the things required of it. The court said that the plaintiff made no claim in his declaration on account of the elevation of the tracks, but his cause of action was against the city for changing the grade of the street so as to damage his property by leaving the first floor of his building, which had been nearly on a level with the street, eight feet above the grade as changed. For such an interference with the plaintiff's rights of property the railway company which did the work, or the city which agreed to pay the damage, would have been liable, regardless of any question of elevating tracks. The doctrine of the *Rigney case* is, that it was intended by the constitution to afford a remedy for damages resulting from an act done with legislative authority where in the absence of such authority there would have been a right of action at the common law. The declaration in this case did not allege that there was any contract for the maintenance of the switch, or any right, as against the railroad company, to its continuance, and therefore the railroad company did not become liable for any damages resulting from raising the tracks and disconnecting the switch, and no action could be maintained against it at common law for such damages. It follows that the defendant was not liable under the constitutional provision.

By the rules of the common law railroad companies could not be compelled to permit individuals to connect side-tracks with their railroad tracks. (*People* v. *Chicago and Northwestern Railway Co.* 57 Ill. 436.) The consti-

tution changed or modified that rule as to warehouses, coal banks and coal yards, but not otherwise. Section 5 of article 13 requires railroad companies to permit connections to be made with their tracks so that any public warehouse, coal bank or coal yard may be reached by their cars, but the plaintiff is not within either of these classes. The act in force July 1, 1909, (Laws of 1909, p. 307,) requires any railroad company to construct, maintain and operate upon its right of way, at any regular station, a switch connection where it is reasonably practicable and it can be put in with safety and will furnish sufficient revenue to justify its construction and maintenance. But that act was not in force either at the time the elevation was required, or on April 7, 1909, when the declaration alleges the railroad company proceeded to elevate the tracks. If it had been in force, the declaration failed to allege that the plaintiff's property was located at any regular station or that other conditions existed giving it any right to the switch connection. The plaintiff was not deprived of any existing right, under that statute, when the elevation was ordered or made, and the declaration does not allege any refusal to permit a connection by a switch at the new grade. It is true that in a suit for damages after a public work has been constructed the measure of the damages that may be recovered and the rules of evidence are the same as in a condemnation proceeding, (*Aldis* v. *Union Elevated Railroad Co.* 203 Ill. 567,) but that does not mean that all depreciation of property on account of a public improvement must be compensated for either in condemnation proceedings or in an action on the case for damages. It was held that the declaration of Aldis, alleging that the means of access to his premises by the erection of the elevated railroad in the street had been cut off; that the light, air and view had been obstructed; that smoke, dust, cinders and filth were thrown into and upon his building, and that there were vibrations of the building, stated a good cause of action.

These were all injuries to property rights. The rules are illustrated by the case of *Freiberg* v. *South Side Elevated Railroad Co.* 221 Ill. 508, a case much relied upon in argument to sustain the claim that damages may be recovered where the owner of the property has no right to the continuance of the existing condition or even where the use of the property is unlawful. In that case the passenger station adjoined the building of the defendant used as a saloon, restaurant and dance hall, where local trains stopped. The purpose of the condemnation was to move the station from its existing location to the opposite side of the street and to erect a third track for express service, on which the trains would run at a maximum speed of forty miles per hour and would not stop at the premises. Undoubtedly the removal of the station would affect the market value of the property, but it was held that evidence of depreciation was incompetent because the railroad company was under no obligation to continue the Twenty-second street station at that place and had the right to operate express trains at the rate of forty miles per hour without stopping there. There was no evidence that the value of the property was any greater on account of the fact that the saloon and dance hall had been conducted in an unlawful manner, but it was held that the company had no right to take the property for a less price than its market value and for that purpose to go into the manner in which the business had been conducted. That case is in entire harmony with the *Rigney case* in holding that there must be an interference with some right which the owner of the property has in connection with his property. It has happened that a right of that character has been connected with the ownership or use of a switch or switch track connection affecting the value of property. In *Chicago, Peoria and St. Louis Railway Co.* v. *Wolf,* 137 Ill. 360, the petitioner sought to condemn for right of way a strip of land adjoining the right of way of the Toledo, St. Louis and Kansas City railroad. On

one of the tracts of land a part of which was sought to be taken was situated a coal shaft, with a building, engine house and appliances for mining, raising and shipping coal, and the coal company had a tramway running from its coal shaft to the coal chutes of the existing railroad company, which was absolutely necessary to the operation of the mine and the shipment of coal. The taking of the strip and construction of a railway thereon would make it necessary to raise the tramway eight feet, or take it down and erect another, and it was held that the evidence of the cost of raising the tramway of the defendant or constructing a new one was proper. In *Hartshorn* v. *Illinois Valley Railway Co.* 216 Ill. 392, there was evidence that the land was adapted for manufacturing purposes, and if devoted to that use, evidence as to securing proper freight accommodation and transportation for employees was necessary to an intelligent estimate of the damages. In *Chicago, Santa Fe and California Railway Co.* v. *Ward,* 128 Ill. 349, it was held proper to take account of the appurtenances to the lot which the proceeding was instituted to condemn. The evidence in all these cases related to market values and substantial property rights. In *Kotz* v. *Illinois Central Railroad Co.* 188 Ill. 578, it was held that a railroad company, when invested with the fee of its right of way, except in the discharge of its duty as a common carrier, is the owner of and entitled to the exclusive use and control of its right of way, relieved from any rights therein of adjoining owners to the same extent as a private person would be; and there can be no dispute of the proposition that a private owner of land, situated with respect to the premises of the plaintiff the same as the right of way of the railroad company, might elevate the ground and build a wall 20 feet high without any accountability to the plaintiff or being subject to any action for damages.

In a condemnation proceeding the law permits the petitioner to exhibit its plans for the construction of the im-

provement, and the damages are assessed on the basis that the plans will be carried out, and only such damage will accrue to adjoining lands as will result from the construction of the improvement according to the plans. If, after such an assessment, there is a change affecting the adjoining lands more unfavorably and depreciating their market value, there is a right of action for the increased damage and the measure is the additional injury caused by the alteration. (*Wabash, St. Louis and Pacific Railway Co.* v. *McDougall,* 126 Ill. 111; *Chicago and Alton Railroad Co.* v. *Henneberry,* 153 id. 354.) In such a case, however, the nature of the damage and the facts essential to a recovery are not changed.

There is a suggestion of an equitable estoppel of the defendant to change the grade of the railroad. The doctrine of equitable estoppel will be applied to a city if justice and right require, as in a case where the assertion of a public right will encourage or permit a fraud; but the declaration here does not allege that the defendant did anything which would operate to give the plaintiff the right to maintain a switch under any doctrine of equitable estoppel. There is not even an allegation that the original grade of the railroad was established by the city. In the exercise of the police power the city had a right, within reasonable limits, to require the railroad company to elevate its tracks so as to avoid grade crossings upon streets and protect the lives and property of its citizens. (*Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309.) That power, like other powers of government, when mere property interests are involved, is subject to constitutional limitations. (*Dunne* v. *People,* 94 Ill. 120; *City of Chicago* v. *Jackson, supra.*) But the power is incapable of alienation, and no valid contract can be made which assumes to surrender or alienate such a power which is required to continue in existence for the welfare of the public. (*City of Chicago* v. *Chicago Union Traction Co.* 199 Ill. 259.) So far as

requiring elevation of the tracks was an exercise of the police power no equitable estoppel could operate to prevent its exercise. All that was alleged in the declaration was that the plaintiff constructed improvements upon its own ground for use in connection with the switch. That gave no right against the city to have the railroad maintained at the existing grade, and we have seen that when considered as a contract to assume any liability of the railroad company the declaration stated no cause of action, because there was no such liability. The court erred in overruling the demurrer.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to sustain the demurrer.

*Reversed and remanded, with directions.*