(No. 3089—)

PATRICK H. DIGNAN, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1939.*

N. TERRY and HOVEY & ELY, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant filed his complaint herein on April 2, 1937, and alleges therein in substance that he is the owner in fee of a tract of vacant and unimproved land containing 44.5 acres located in Section 7, Township 37, North Range 13 East of the Third Principal Meridian, in the Town of Worth, in the County of Cook and State of Illinois; that said tract is bounded on the north by 99th Street, on the east by Ridgeland Avenue, and abuts the right-of-way of the Chicago Terminal Railway Co. on the southwest, and is traversed by a public highway known as the Southwest Highway, which is 100 feet in width and traverses the southeast portion of said property for a distance of approximately 825 feet; that on or about August 18th, 1930 the County of Cook entered into a contract with one James P. O'Keefe, whereby said Southwest Highway was to be extended to traverse the land of the claimant at grade level; that on November 23d, 1931, said County of Cook filed a condemnation proceeding in the Superior Court of Cook County to condemn a right-of-way for a public highway (said Southwest Highway) through claimant's land; that thereafter, to wit, on October 15th, 1932, claimant accepted the sum of $6,791.10 "in full payment from the County of Cook for any compensation or award due to him under the aforesaid condemnation suit;" that said sum was accepted by claimant, "based on the plans, surveys and proposals of the County of Cook and its existing contract with James P. O'Keefe as aforesaid that the said highway would cross and traverse the land of the plaintiff at grade level;" that thereby the County of Cook acquired the right-of-way across the land of the claimant to construct a grade level highway; that said suit was dismissed on January 16th, 1933; that on March 1st, 1934 the Illinois Commerce Commission entered an order allowing the County of Cook to construct an over-crossing for the Southwest Highway, said over-crossing to be a 27-span structure having a roadway width of 44 feet, with a sidewalk width of five feet on the easterly side thereof, said over-crossing to traverse the property of the claimant

for a length of 825 feet, more or less; that on or about March 1st, 1934 the respondent started the construction of the over-crossing and highway across the land of the claimant and completed same in October, 1934; that by reason of the construction of such over-crossing over the land of the claimant, his land has been divided, and direct access to said land from the Southwest Highway has been cut off, and his property has been damaged to the extent of $100,000.00, in violation of his constitutional rights.

Testimony was taken on behalf of the claimant. The claimant and one Harry L. Emerson were permitted to testify as to their respective understanding of certain court proceedings, contracts, etc., pursuant to a stipulation that claimant would thereafter produce certified photostatic copies of such documents.

Claimant having failed to produce the same in accordance with the stipulation, a rule was entered herein on the 14th day of February, A. D. 1939, requiring him to produce the same within twenty days thereafter. Upon his failure to comply with the rule, all testimony of the claimant and of Harry L. Emerson relative to the contents of the documents embraced in the aforementioned stipulation, was stricken from the record.

Upon the close of claimant's case, the Attorney General moved to dismiss the case upon the following grounds:

1. The acceptance by claimant of the sum of $6,791.10 under the facts in the record constituted a release of any and all claims for compensation for land taken, as well as for land damaged but not taken.

2. Even if claimant were entitled to damages, there is no competent evidence in the record to establish the same.

The case now comes before the court for consideration upon that part of the testimony offered on the part of the claimant which remains in the record, the report of the Division of Highways, copy of which was forwarded by respondent to claimant pursuant to the rules of this court; and the motion of the respondent to dismiss the case.

Claimant takes the position that the sum of $6,791.10 so paid to him by the County of Cook as aforesaid, was accepted by him with the understanding that the highway in question would cross his land at grade level and not by way of an over-

crossing; and that the plans for the construction of the improvement pursuant to which he was paid the sum of $6,791.10 provided for a grade crossing.

The law applicable to cases of this kind is set forth in the case of *Otis Elevator Co.* vs. *City of Chicago*, 263 Ill. 419, as follows:

"In a condemnation proceeding the law permits the petitioner to exhibit its plans for the construction of the improvement, and the damages are assessed on the basis that the plans will be carried out, and only such damage will accrue to adjoining lands as will result from the construction of the improvement according to the plans. If, after such an assessment, there is a change affecting the adjoining lands more unfavorably and depreciating their market value, there is a right of action for the increased damage and the measure is the additional injury caused by the alteration."

It is admitted that the highway was actually constructed as an over-crossing, consequently it devolved upon claimant to show that the plans for the improvement in accordance with which he was compensated, provided for a grade level highway. The best evidence of such facts was the original plans. If such plans, or properly authenticated copies thereof, could not be obtained, secondary evidence of the contents thereof should have been offered. However, claimant not only failed to produce the original plans or properly authenticated copies thereof, but also failed to produce any competent secondary evidence of the contents of the same. He testified personally as to such plans, and produced the testimony of another witness with reference thereto, upon an agreement with opposing counsel to produce the original documents later. The original documents, however, were not produced, and the verbal testimony relative thereto was stricken from the record.

The report of the Division of Highways, copy of which was forwarded to claimant, and which under Rule 21 of this court is prima facie evidence of the facts set forth therein, contains, among other things, the following:

"The settlement Mr. Dignan made with the county mentioned in paragraph 7 was a settlement for land taken and release of damage to land not taken to build the Southwest Highway over the Belt Railroad on the southeasterly line of the Dignan property."

There was included in such report of the Division of Highways as a part thereof, a portion of an appraisal of claimant's property prepared by Barrett Bros. showing, among other things, the following items:

## VALUATION

Land (exclusive of improvements) 1.676 acres @ $1,200.00
per acre .......................................... $2,011.20
Improvements ........................................ None
Consequential Damages ............................... None
Damages to remainder (see remarks).................. 4,785.90

Total .......................................... $6,797.10

In our opinion the highest and best use of the unit of land containing 44.54 acres, of which the tract to be acquired for highway is now a part, is for utilization for industrial purposes. The proposed highway which will intersect this unit of 44.54 acres of land will leave approximately 9.946 acres lying on the southeasterly side of the new highway. The construction of a bridge over this portion of the area to be acquired for highway will, in our opinion, interfere with the light and air of any industrial building to be constructed within the area of 50 feet on either side of the proposed highway. The amount which we have allowed in this appraisal as damages to the remainder in the sum of $4,785.90, due to the taking of the above tract for highway purposes and the construction of a bridge on this area to be acquired, was derived as follows:

(1) Valuation of a 50 ft. strip of land on each side of the Proposed Highway extending from Ridgeland Avenue to the railroad right of way, a total of 1.690 acres @ $1,200.00 per acre............. $2,028.00
(2) The proposed highway will isolate approximately 9.946 acres lying southeasterly of the new highway. Of this 9.946 acres, we have allowed 100% damage to the first 50 ft. abutting on the new highway on the southeast, which is equivalent to 0.753 acres. Deducting 0.753 acres from 9.946 acres leaves an area remaining of 9.193 acres. In our opinion this remaining area of 9.193 acres will be damaged to the extent of 25% of its valuation. The total valuation of this area of 9.193 acres at $1,200.00 per acre makes a total sum of $11,031.60—25% of this amount equals $2,757.90.. $2,757.90

Total Damage ......................................... $4,785.90

The aforementioned report of the Division of Highways contains the further statement:

"Mr. Dignan was shown this appraisal at the time he dedicated the right of way and waived any damage that might be caused to his property by the construction of this road."

The aforementioned report of the Division of Highways also has attached thereto a blue print which purports to show the following dedication over the signature of the claimant, to wit:

"We the undersigned being the owners of premises described in the caption hereon and shown as public highway on the plat hereon drawn, hereby grant to the public a perpetual easement over same for use for highway purposes and hereby forever release any and all claims for damages sus-

tained by us or either of us by reason of the opening, improving and using of said premises for highway purposes."

It is true that claimant stated that he did not sign such dedication, and that the signature thereto purporting to be his signature is a forgery, but there is no evidence in the record to corroborate his testimony. The execution of the dedication appears to be duly acknowledged before a Notary Public and the same has been duly recorded.

Our Supreme Court has held in numerous cases that where a deed has been acknowledged and contains the certificate of an officer authorized by law to take acknowledgments, the certificate of the officer showing that the deed was executed and acknowledged by the grantor, cannot be overcome or impeached by the testimony of the grantor alone. *Jaworski* vs. *Sujewicz*, 334 Ill. 19; *Holmes* vs. *First Union Tr. & Svg. Bank*, 362 Ill. 44; *Dombro* vs. *Hugo*, 370 Ill. 381.

Furthermore, there is other evidence in the record to indicate that the signature in question is the genuine signature of the claimant.

The evidence in the record fails to establish the right of the claimant to an award, and the motion of the Attorney General must therefore be sustained.

In the view we take of the case, it becomes unnecessary to consider the second point raised by the Attorney General.

The motion of the Attorney General to dismiss is allowed. Case dismissed.