CHARLES HOHMANN

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa January 18, 1892.*

1. MUNICIPAL CORPORATION—*liability for injury to business from constructing viaduct over street.* A city will not be liable to a saloon-keeper for the diversion of customers from his saloon by the erection of a viaduct over a street adjoining his place of business. If access to and egress from his premises are not cut off or injured by a street improvement, he will not be entitled to damages to his property. He has no vested legal right in having the street so kept as to attract the largest amount of travel by his premises, so as to bring the largest number of customers to his saloon.

2. EVIDENCE—*to show injury to business and leasehold property.* In an action against a city to recover damages to the plaintiff's business and leasehold property from the construction of a viaduct near the premises, which tended to diminish the travel in that vicinity, the plaintiff offered to prove the average monthly receipts of his saloon business at its former location for the six months next preceding the erection of the viaduct, and compare them with his average monthly receipts in his new location since the viaduct was built, which the court refused to allow: *Held,* that the evidence was properly refused, even if a diminution of the plaintiff's business was an element of damages in the case.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

Mr. JOHN LYLE KING, and Mr. F. W. BENNETT, for the appellant:

The case of *Rigney* v. *Chicago,* 102 Ill. 64, in its principles, applies to and warrants this action. While there are several subsequent cases which approve of and reiterate that case, as *Railroad Co.* v. *Ayres,* 106 Ill. 518, and *Chicago* v. *Union Building Association,* 102 id. 379, these are not in conflict with or modify it.

As to the measure of damages and evidence to show damages, see 1 Sutherland on Damages, 121; 3 id. 154; *John* v. *Mayor*, 13 How. Pr. 527; *Benton* v. *Fay*, 64 Ill. 416; *Chapman* v. *Kirby*, 49 id. 211; *Railroad Co.* v. *Decker*, 3 Bradw. 135; *Railroad Co.* v. *Capps*, 72 Ill. 188; 67 id. 607; *Chandler* v. *Allison*, 10 Mich. 460; 11 id. 542.

Mr. JOHN S. MILLER, and Mr. GEORGE A. DUPUY, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by Charles Hohmann against the city of Chicago, to recover damages to the plaintiff's leasehold interest in premises situated on the northeast corner of North Western Avenue and Fulton street, Chicago, and to the business carried on by him on said premises, caused by the erection on said North Western Avenue of a viaduct over Kinzie street. Fulton street, as it seems, is a street running east and west, and is the street parallel to and next south of Kinzie street, both of said streets being crossed at right angles by North Western Avenue. Most of Kinzie street, as well as a portion of the land adjoining, is occupied by the tracks of several railroad companies, and for the purpose of providing a way over said tracks, the city of Chicago, in the summer of 1888, built a viaduct over them on North Western Avenue, the southerly approach to said viaduct commencing at or near the corner of Fulton street.

The declaration alleges, in substance, that the plaintiff was in possession of his said premises under a written lease to him from Henry Keating, the owner thereof in fee, for a term commencing May 1, 1888, and ending April 30, 1893, at an annual rental of $1000, and that, on the first floor of said building, he was carrying on the saloon business, and was occupying the second story as a residence for himself and family; that in his saloon business he had a large, profitable and val-

uable custom and patronage, by reason of the location of said premises on the corner of said North Western Avenue and Fulton street, and the facility and convenience of access to and egress from said premises, said North Western Avenue being a public street of said city, with the duty on the part of the city to keep the same free from all obstructions thereon in front of said premises, whereby there might be full, complete and unimpeded access to and egress from said premises, and full enjoyment of said premises and the easements of light and air; yet the city, regardless of its duty, erected said viaduct, with one of the approaches thereto in front of said premises, whereby the access to said premises is obstructed, cut off and made impracticable, and the easements of light and air greatly diminished, disturbed and impaired, and whereby also the plaintiff's leasehold interest in said premises has been and is greatly depreciated in value, and the traffic and travel from said North Western Avenue have been greatly lessened, diverted, obstructed and cut off, in consequence of which the custom, patronage and business of the plaintiff has been greatly diverted, cut off and diminished to such an extent that the receipts of said business, since and during the construction of said viaduct and approaches have been reduced and caused to fall off, to-wit, $400 per month.

The defendant pleaded not guilty, and at the trial the jury were permitted to visit and view the premises, and evidence was given on behalf of the plaintiff tending to sustain the allegations of his declaration as to damages, and evidence was introduced on behalf of the defendant tending to a contrary conclusion. The jury thereupon rendered a verdict finding the defendant not guilty, and the court, after denying the plaintiff's motion for a new trial, gave judgment in favor of the defendant for costs. On appeal to the Appellate Court said judgment was affirmed, and the record is now brought here by a further appeal, the judges of the Appellate Court having granted the plaintiff the necessary certificate of importance.

The propriety of the verdict on the evidence before the jury is conclusively settled by the judgment of the Appellate Court, and is not open for consideration here. No complaint is made of any of the instructions to the jury, nor of any ruling of the trial court, except in the matter of certain evidence offered on behalf of the plaintiff and excluded by the court, and the propriety of the decision of the court excluding said evidence therefore is the only question presented for our consideration.

The evidence tends to show that, for several years prior to the commencement of his present lease, the plaintiff kept a saloon on the west side of North Western Avenue, and about one hundred and fifty feet north of the corner of Fulton street, and the evidence also tends to show that, on and along Kinzie street from North Western Avenue, west, are the yards of one or more of the railroad companies occupying Kinzie street with their tracks, and that a large number of persons in the service of said railroad companies were employed in said yard and had their residences in the immediate vicinity; that said railroad companies stopped all their trains, of which a large number passed daily, at North Western Avenue, and that while the plaintiff was keeping his saloon at his former place, his main patronage was from the railroad employes in the railroad yard or in charge of said trains.

For the purpose of showing that the plaintiff's patronage and business had been injured and diminished by the building of the viaduct and approaches, and also, as is now claimed, for the purpose of showing a diminution from the same cause of the market value of his leasehold interest, the plaintiff's counsel, while examining the plaintiff as a witness, offered to prove by him the average monthly receipts of the plaintiff's saloon business at its former location, for the six months next preceding the erection of said viaduct, and compare the same with his average monthly receipts for the same period in his new location since the viaduct was built. This evidence was excluded by the court, and its exclusion is now assigned for error.

In our opinion there was no error in the exclusion of this evidence. Even if it should be admitted that a diversion of customers from the plaintiff's saloon and the diminution of his business in consequence thereof, was an element of damage which the jury could properly consider, we do not think that a comparison of the receipts of his business in his present lo-- cation with those of a business carried on at a former period, in a different locality, and with different surroundings, would tend to show such diversion. A multitude of modifying circumstances having no connection with the viaduct may have existed, tending to increase his receipts at his former location, or tending to diminish his receipts at a later period after his removal. To make the evidence of any value, it would be necessary to show a substantial identity of conditions in all respects, but no offer was made to do that, if indeed proof of that character would have been possible.

But it seems plain that a diversion of customers from the plaintiff's saloon was not an element of damage for which the plaintiff could recover. It is not pretended that access to his premises from the public street was cut off. His premises fronted on Fulton street, and if the approach to the viaduct on North Western Avenue commenced at a point south of his premises, it was but a very few feet south, and opposite the plaintiff's west front the wall of the approach was not more than one foot to two feet in height, a considerable space being left between said wall and the plaintiff's building. It is not claimed that travel on said avenue was thus cut off, but only that it was diminished. This seems to have resulted from two causes, first, because heavily loaded teams preferred not to drive over the viaduct on account of the steepness of the approach, and secondly, because persons coming on foot from the railroad yards, or from the Western Avenue railway station, preferred to go some other way, rather than ascend the stairway leading from Kinzie street up to the roadway of the viaduct. Thus it may have happened that much of the travel

which before the erection of the viaduct was accustomed to pass along said avenue, chose another and more convenient route after the viaduct was built.

But this constituted no element of legal damage. Admitting the plaintiff's right to have said avenue so kept as not to cut off free access thereto from his premises, he had no vested right in having it so kept as to attract the largest amount of travel by his premises, so as to bring the largest number of customers to the bar of his saloon. The improvement of the avenue by building a safe way over the numerous railroad tracks in Kinzie street was a legitimate improvement, but if in consequence of it the plaintiff's premises were cut off from proper access to the avenue, that was a matter which it was proper for the jury to consider in determining whether he was entitled to damages. But the effect of the verdict upon the amount of general travel by the public along the avenue is quite another question. That is a matter in which the plaintiff has no legal interest.

To illustrate, if the city had seen fit to improve other streets so as to make them much more desirable than the avenue, and had thereby diverted a large part of the public travel away from said avenue so that they no longer passed the plaintiff's saloon, the effect upon his business would have been the same, but no one, we presume, would have contended that a right to damages would thereby have accrued to the plaintiff.

The only possible effect of the evidence offered would have been to show that, in consequence of the construction of the viaduct, less people traveled along said avenue and past the plaintiff's saloon, and that, as a consequence, the number of his customers was diminished. Since the plaintiff, even if that were true, would have no legal right to complain, the evidence offered was wholly immaterial, and was properly excluded.

There being no error in the record, the judgment will be affirmed.

*Judgment affirmed.*