## City of Chicago v. Mary E. McShane et al.

1. STREETS—*Damages Caused by Changing the Grades.*—In the case of the change of the grade of a street the measure of damages is the difference in the value of the property affected, before and after such change, taking into consideration the increased value of the whole improvement to the property itself.

2. DAMAGES—*Diversion of Customers Not a Proper Element of, in Actions for Lowering the Grade of a Street.*—Depreciation of rental and market values from the diversion of customers, caused by the mere elevation of a railroad track and the depression of a street under the subway, is not a proper element of damages in an action for lowering the grade of the street.

3. DAMNUM ABSQUE INJURIA—*What are Included and Classed as Such.*—There are certain injuries which are necessarily incident to the ownership of property in towns and cities which directly impair the value of private property, for which the law affords no relief, such as the building of a jail, a police station or the erection and maintenance of a small-pox hospital, and are classed as *damnum absque injuria.*

4. SAME—*Damages Resulting from Lowering the Grade of Streets Not Classed as Such.*—There is a marked difference in the use by a city of its property in changing the grades of streets, and if, in so doing, adjacent property is injured, such injury is not to be classed as *damnum absque injuria,* as may grow out of the proper use of its police powers.

5. DEFENSES—*What Is a Matter of Defense in Actions for Damages Resulting from the Lowering of the Grade of a Street.*—In actions to recover damages alleged to have been occasioned by lowering the grade of a street, the fact that the property has been benefited by the entire improvement in other respects to such an extent as to compensate the owner for the damage caused by lowering such street is a matter of defense to the action.

**Action to Recover Damages,** for lowering the grade of a street. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1901. Reversed and remanded. Opinion filed May 23, 1902.

CHARLES M. WALKER, corporation counsel, and THOMAS J. SUTHERLAND, attorneys for appellant.

FRANCIS T. COLBY and WM. M. & WM. S. JOHNSTON, attorneys for appellees.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an action to recover damages alleged to have been occasioned by lowering the grade of Forty-seventh street in front of the appellees' premises. The suit as originally brought included as defendants the Lake Shore and Michigan Southern and the Chicago, Rock Island & Pacific Railway Companies, as well as the City of Chicago,

the appellant herein, but was subsequently discontinued as to the railroad companies.

It appears that appellees' premises have a frontage of twenty-five feet on Forty-seventh street and are bounded on the west by an alley which is adjacent to the right of way occupied by the tracks of the railroad companies above referred to. Upon appellees' said lot there stands a building erected, it is said, in the year 1879, and used as a residence and store, which building, it is claimed, was erected with reference to the grade of Forty-seventh street as established at that time. July 9, 1894, the city council of Chicago enacted an ordinance requiring the Lake Shore & Michigan Southern and the Chicago, Rock Island & Pacific Railway Companies to elevate the plane of certain of their railway tracks within the city of Chicago. In pursuance of this ordinance these companies, under the supervision of the city, excavated a portion of the street in front of appellees' property where it approaches the railroad right of way in order to depress that part of Forty-seventh street and cause it to pass under the railroad tracks through subways constructed for the purpose. It is charged in the declaration that in thus lowering the grade of the street and sidewalk thereon in front of appellees' premises to a depth of five or six feet, access to the premises has been rendered difficult and dangerous, and the value of the property permanently depreciated.

It is claimed on the part of the appellant that the declaration does not state a cause of action, in that it is therein averred the damages alleged to have been suffered by the plaintiff are the result merely of lowering the grade of the street and not of the improvement considered as a whole. We do not regard this objection, raised here for the first time, as well taken. If the entire improvement benefited the property in other respects to such an extent as to compensate for the damage, if any, caused by depressing the street in its immediate front, this is matter of defense, and it is the defense the city makes. Moreover the fifth additional count sets up the passage of the ordinance pro-

viding for the improvement and charges that the street was
lowered under its provisions and requirements.    We regard
the declaration as stating  a cause of action without doubt,
and it is too late in this case to raise the objections here for
the first time which appellant's attorneys argue at some
length.    Recovery in this action would certainly bar any
suit for other claims growing out of  matters arising under
that ordinance, and appellant could not complain if the
plaintiff failed to include in the declaration any other
claims he might otherwise have been entitled to make.

It is urged that the work done under the ordinance was
in pursuance of an entirely proper exercise of the police
power of the city and that the latter is not liable for dam-
ages to private property thereby occasioned.    In Rigny v.
City of Chicago reference is made to injuries to private
property in the exercise of the police power of a municipal-
ity, and it is said :   " There are certain injuries which are
necessarily incident to the ownership of property in towns
or cities which  directly impair the value of  private prop-
erty, for which the law does not and never has afforded
relief.    For instance, the building of a jail, police station or
the like, will generally cause a direct depreciation in the
value of neighboring property; yet that is clearly a case of
*damnum absque injuria.*"    The theory of the law in such
cases is that the property owner is compensated for the
injury by his share in the  general public benefit.    In like
manner it has been held that the erection and maintenance
by the city on its own property of a small-pox hospital is
not different in principle, and affords no ground for recovery
of damages by the owner of neighboring property thereby
injured.   (Frazer v. City of Chicago, 186 Ill. 480–490.)   In
that case our Supreme Court says:   " There is a  marked
difference in the use by a  city of its  property carefully,
prudently and without negligence in the reasonable exercise
of its police power, and that of  the change of grade of
streets, the building of a viaduct, the closing of a street or
alley, or the inconvenience caused by the use and operation
of a railroad company of its property.   In the case of the

City of Chicago v. McShane.

change of grade the measure of damages allowable is the difference in the value of the property before and after the making of the improvement, taking into consideration the increased value of the improvement to the property itself. Nor as above indicated, can there be any recovery for damages sustained, shared by the public in common." The improvement now in controversy is claimed to have directly and physically injured private property, and in so far as this is true, such property is damaged for public use within the constitutional provision for compensation in such cases. It is not a case of *damnum absque injuria* such as may grow out of the proper exercise of the police power.

It is claimed that the trial court improperly refused to allow appellant's attorney to make an opening statement to the jury before the latter were sent out to view the premises. We find no fault with the court's exercise of its discretion in that respect. Appellant's attorneys are mistaken in stating that the jury's view in a case of this kind was in the nature of evidence. It is so provided by statute in condemnation cases. But in cases of this character such view is wholly within the sound legal discretion of the trial court as at common law, not as evidence, but to enable the jury better to understand and apply the evidence. (Metropolitan W. S. El. Ry. Co. v. Goll, 100 Ill. App. 323, and cases there cited. See also, Rich v. City of Chicago, 187 Ill. 396.) For this purpose there was no necessity that the jury should be taken over the whole area involved in the elevation of these tracks.

It is further claimed that the trial court erred in allowing testimony as to the effect of the subway and elevation of the tracks upon plaintiff's business, as an element affecting the market and rental values of the property, and also as to the effect upon the business of occupants of other premises in the same block. It is true, as is said in Hohmann v. City of Chicago, 140 Ill. 226–230, that "a diversion of customers from the plaintiff's saloon was not an element of damage for which the plaintiff could recover," and testimony that such is the effect of the elevation and

subway in the case at bar is not relevant. In the case last above referred to it is said (p. 231), " Admitting the plaintiff's right to have said avenue so kept as not to cut off free access thereto from his premises, he had no vested right in having it so kept as to attract the largest amount of travel by his premises, so as to bring the largest number of customers to his saloon." There was, therefore, we think, error in admitting testimony as to the diversion of business which it is said before the elevation came " from across the tracks," and the jury had no right to take into consideration the alleged diversion of traffic by the construction of the subway, and the depreciation of rental and market values said to have been thereby caused. The elevation of the track and the construction of the subway was an improvement of an entirely proper character for the city to require. Various causes may change the tide of travel from one street to another, such as a better improvement of another street by the city or the erection of better buildings by private owners thereon. Yet the injury to the business of one from whose vicinity travel is thus diverted is not such as to give him right of action against any one. Every property owner holds his property subject to such contingencies. Depreciation of rental and market values from such diversion, caused by the mere elevation of the railroad right of way and the depression of the street under the subway, is not, therefore, an element of damage proper to be taken into consideration in this case.

There is testimony offered on both sides tending to show on the one hand that the elevation of the tracks and construction of the subway have greatly depreciated the value of the property, and on the other that the effect of the improvement has been to benefit it. This evidence on the part of appellee consists mainly of the opinions of the witnesses so testifying, but competent and material facts upon which such opinions could be based seem to be wanting. Mere arbitrary expressions of opinion, as, for example, the statement of one witness that the property had been depreciated from $7,000 to $15,000 by the mere eleva-

tion of the tracks and the depression of the street, are of little value when not supported by tangible facts or reasons based on such facts.    Damages, if any, occasioned by the elevation of its tracks by a railway company on its own right of way are moreover *damnum absque injuria* and not recoverable.  (Kotz v. I. C. Ry. Co., 188 Ill. 578.)    The explanation given by the witness, that "the business that came from across the tracks was cut off," is not sufficient basis for such an opinion, for reasons, some of which have already been referred to.    In the first place it does not appear how such business has been or could be "cut off" by the elevation of the tracks and the construction of a subway, and again, as we have said, the mere diversion of travel or business by an improvement is not a ground for recovery against the city.    On the other hand it clearly appears that before elevation the crossing of the tracks at Forty-seventh street was dangerous and often blocked by trains, a condition entirely eliminated by the elevation and subway.    Indeed, it seems to have been considered by appellee's attorney, during the examination of the witness Hastings, that this blockade had been a benefit, in that by reason of it customers went to appellees' saloon, and that the removal of the blockade by the subway was thus one of the elements of damage suffered by his client from the improvement.    It is needless to say that such damage affords no ground for recovery.

There is, however, no doubt from the evidence that access to and from the plaintiff's premises was cut off or at least seriously interfered with by lowering the grade of the sidewalk about five feet below the entrance to appellee's building, which stood on the street line.    This was an injury peculiar to the plaintiff's property and different in kind as well as degree from that suffered by the general public.    The difference in value so caused between the values of the property before and after the making of the improvement, taking into consideration the increased value of the property, if any, due to the improvement itself, is the measure of appellee's damages.

It is apparent from a reading of the evidence that it was not thus limited on the part of the appellee and that elements affording no ground for recovery were erroneously pressed upon the attention of the jury.

Complaint is made of other matters which we need not review. It was improper, for reasons above referred to, to instruct the jury to consider as evidence their view of the premises in a case of this character. The purpose of the view was simply to enable them to comprehend the issue and apply the evidence to the situation understandingly.

For the reasons indicated the judgment must be reversed and the cause remanded.