Frank Cuneo, Appellant, v. City of Chicago, Appellee.

Gen. No. 39,412.

236

Opinion filed November 8, 1937.   Rehearing denied November 22, 1937.

MATTHIAS CONCANNON, WILLIAM H. DILLON and JOHN L. McINERNEY, all of Chicago, for appellant.

BARNET HODES, Corporation Counsel, for appellee; JOHN W. McCARTHY and ALEXANDER J. RESA, Assistant Corporation Counsel, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit to recover damages to his property at the southwest corner of Clark and South Water streets in Chicago caused by defendant changing the grades of these streets adjoining plaintiff's property, in connection with the construction of the

Wacker drive improvement. Plaintiff presented evidence tending to show that the market value of his property had been depreciated by reason of these changes, and defendant introduced evidence tending to show the contrary. The jury returned a verdict for defendant and plaintiff appeals from the judgment thereon.

In March, 1913, the Northern Trust Company, as trustee, leased the premises to plaintiff for a term of 99 years; the property has a frontage on South Water street of 22 feet and 90 feet on Clark; the lease provided that the lessee should pay ground rent of $6,300 a year and all taxes and assessments levied or assessed against the property.

In 1916 and 1917 plaintiff erected an eight-story modern office and store building covering the entire frontage at a cost of approximately $180,000; the first floor was designed for use as retail stores, the upper floors for office space. Before the building was erected South Water and Clark streets were on a level plane with sidewalks and roadways. The building was so constructed that all entrances to the building were level with the sidewalks.

In June, 1922, defendant by its city council passed an ordinance providing for the construction of a two-level street in South Water street and for raising the grades of the intersecting streets from Lake street (the next street south) to South Water street, so as to make the intersecting streets meet the elevation of the upper level of what is now called Wacker drive.

This work was commenced in October, 1925, and finished in October, 1926. Upon completion of the work the sidewalk on the upper level of Wacker drive adjoining plaintiff's property was about 5 feet 7½ inches above the level of the first floor of plaintiff's building, and the sidewalk on Clark street next to Wacker drive was also about the same distance above the floor level

of the first floor. The sidewalk sloped down from Wacker drive along Clark to Lake street, so that at the south end of plaintiff's building the new sidewalk on Clark street was 4 feet 8 inches above the level of the first floor of the building.

After the completion of Wacker drive plaintiff remodeled his building, putting in a new first floor at an elevation conforming with the elevation of the upper level of Wacker drive and the new grade in Clark street and raised the floor of the basement so as to · make it conform to the sidewalk in the lower level. All the witnesses agreed that such reconstruction was necessary. This work was commenced in October, 1926, and completed in May, 1927. As a result the ceiling height of the first or store floor and of the lobby was reduced from 15 feet 1 7/8 inches to 9 feet 8 inches. The cost to plaintiff of this reconstruction was $34,674.96. There is no dispute as to this and it is stipulated that no part of this expenditure has been collected by plaintiff from defendant or anyone else.

It was also agreed that October 1, 1925, was the date for determining the fair cash market value of plaintiff's property before the Wacker drive improvement, and October 1, 1926, the date for determining this value after the improvement.

It is conceded that under sec. 13, art. 2, of the Constitution of 1870 the right to recover compensation for damages caused by change of street grades is established. *Rigney v. City of Chicago,* 102 Ill. 64; *Chapman v. City of Staunton,* 246 Ill. 394.

Each of the parties called two qualified witnesses who gave their opinions on the effect on plaintiff's property of this improvement, and plaintiff argues that the verdict for the defendant is against the manifest weight of the evidence. Plaintiff's witnesses gave their opinion that the fair cash market value of plaintiff's property, prior to the construction of Wacker

drive, was $193,952, and after construction of the street improvement the value was approximately $85,000. (The witnesses differed slightly in their estimates.) Both testified that there had been a loss to plaintiff of approximately $109,000. These opinions took into consideration the rents actually derived from the property. It was shown that the average net income during 1921 to 1924 inclusive before the improvement was a little over $17,000 a year, while after the improvement and the reconstruction of plaintiff's property the net income during 1928 and 1930 inclusive was something over $10,000 a year. Plaintiff's witnesses based their opinions as to depreciation in value of the property upon this substantial reduction in the rental income.

South Water street is the first street south of the Chicago river and in making Wacker drive all of the property on the north side of South Water street abutting the river was taken. The change wiped out South Water street and made a double level street running along the south bank of the river. One witness described the upper level as a "modern boulevard," attracting shops, stores and all kinds of high grade business; that after the improvement there was a sweep to the north across the drive to the river, giving "approximately 300 feet of uninterrupted light." Another witness said the construction of the drive made five blocks of property on the south side of the drive, running from Franklin street to State street, available for improvements.

As opposed to plaintiff's witnesses Mr. Prussing testified for defendant that in his opinion the value of the premises before the improvement of Wacker drive was something over $162,000, and after it, with the building reconstructed, was over $195,000. Defendant's witness Snelling testified that in his opinion, before Wacker drive was built the market value of the premises was over $203,000, and that immediately after

this, with the building reconstructed, it was worth over $240,000.

We shall not attempt to follow the close and able analysis made by counsel for plaintiff of the testimony of defendant's witnesses. Such testimony is largely a matter of opinion and is open to attack from various points.

Rental receipts should be considered in determining the market value of property and are an important factor, but other circumstances should also be considered in determining market value. *City of Chicago v. Witt*, 289 Ill. 520, 524; *City of Chicago v. Jackson*, 333 Ill. 345, 350.

Evidence was introduced showing that to a large extent the decline in rentals received by plaintiff was due to the removal of the market business from South Water street. Mr. Trainer, testifying for plaintiff, described South Water street prior to the construction of Wacker drive. The buildings on that street were non-fireproof, of the store and loft type, used for produce business and storage. Mr. Lyons described the business on South Water street as "the great central produce market of the middle west." The street was congested from "hub to hub" and it was a distributing center for restaurant and hotel men and dealers in fruit products from all over Chicago and also from all over the middle west. The market was known "from coast to coast." It was in evidence that at this time plaintiff's building was largely occupied by persons related to this market business. Such tenants were officers of some of the market stores, a restaurant and also telegraph companies, for, as one witness said, the South Water street men used the telegraph a great deal.

The Wacker drive improvement contemplated and caused the removal of this entire market business to another part of the city of Chicago. In other words,

the market business at this locality no longer existed. Defendant argues that naturally persons, who rented space in plaintiff's building because of their connection with and its proximity to the market business, would no longer become tenants of plaintiff, and says that this diversion of business from plaintiff's property is an element of damages for which no recovery can be had against defendant. In *Hohmann v. City of Chicago,* 140 Ill. 226, 231, the defendant had constructed a viaduct which diverted a large part of the public travel away from the street on which plaintiff's business was located; he claimed damages because the number of his customers was diminished by this construction. It was held that he had no legal right to recovery. A similar action was brought by the plaintiff in *City of Chicago v. Spoor,* 190 Ill. 340, 349. The court followed the decision of the *Hohmann* case, holding in effect that plaintiff had no right as against the city to have the street maintained in such a way as would be more convenient or profitable to the adjoining property owner, and that as he had no legal right of that kind there could be no recovery for resulting damages. See also *City of Chicago v. McShane,* 102 Ill. App. 239, 243, 244. The removal of the market from South Water street had the effect of diminishing the rental receipts of plaintiff's building, and we hold that defendant is not liable in damages for this.

Bearing in mind that October 1, 1926, the date when Wacker drive was completed, was the date for determining the market value of the premises, we think it a fair conclusion from the testimony of all the witnesses that on that date the opinion was general that the Wacker drive improvement would have a marked effect on increasing the market value of the properties adjacent to the drive. It is reasonable to infer that that expectancy would improve the market value of plaintiff's property. Prussing testified that after the drive

242

was constructed, in 1926, 1927 and 1928, nearly every piece of property on the south side of the drive was either sold or leased for a long term. Plaintiff's witness, Mr. Trainer, said that it was then his belief that the construction of this drive would "develop the street and the abutting properties to better use." And upon the strength of his judgment buildings involving millions of dollars were constructed on the drive. This witness, a man of large experience in valuing Chicago properties and of good judgment, summed up his opinion by saying, "that eventually the growth in the central district of the city and the Wacker improvement will prove beneficial to that property. . . . After conditions return to normal this neighborhood will have more chance to prosper with the present improvement than with old South Water street."

The jury, considering all the circumstances, including the removal of the market business, together with the opinions of the witnesses, could reasonably arrive at the conclusion that no recovery could be had against the defendant.

Plaintiff alleges errors which he says entitle him to another trial. The ordinance for the Wacker drive improvement provided that the cost should be paid for by special assessment, and plaintiff offered in evidence a certified copy of an order entered by the county court of Cook county in the proceedings for confirmation of the special assessment, which order recites that the court having heard evidence finds that plaintiff's property will not be benefited by the improvement and the assessment against his property is canceled. Plaintiff argues that this finding was *res adjudicata* as to whether the property was benefited; that the question was no longer open and that any evidence which tended to show that the improvement increased the value was incompetent. In answer it may be said that both parties without objection introduced evidence as to values,

based upon the future development of the locality. It was not claimed upon the trial that this question had been adjudicated in the county court so as to make such testimony incompetent. Moreover, the finding of the county court upon an assessment to pay for improvements is not necessarily *res adjudicata*. *City of Chicago v. Clark,* 233 Ill. 404; *People·v. City of St. Louis,* 367 Ill. 57, 69.

Furthermore, the refusal to admit the order of the county court did not injure plaintiff. Defendant argues that the county court merely found that the market value of the property would not be greater than it was before; that the market value is the price which a purchaser ready, able and willing, but not compelled to purchase, would pay for the property in October, 1926; that such a price would necessarily take into consideration the cost of remodeling the property to conform to the conditions created by the improvement; if this cost exceeded the benefits resulting from the improvement the market value would be less than it was before the improvement; if the cost was less than these benefits, then the value would be enhanced by the improvement; in finding that the property was not benefited the county court did no more than find that the value of the resulting benefits did not exceed the cost of remodeling. This reply by defendant is sound.

Plaintiff further argues that counsel for defendant in his closing argument to the jury made prejudicial remarks which necessitate a reversal. Defendant's attorney referred to the plaintiff as one of the "biggest taxpayers in Chicago," with implications that he was a man of wealth. Such comments are ordinarily improper, but examination of the record shows that plaintiff's financial standing was alluded to on cross-examination by plaintiff's attorney of defendant's witness Prussing. He was asked whether or not plaintiff owned a great deal of property in Chicago and whether

plaintiff and his family were one of the largest owners of real estate in Chicago and had not bought other pieces of property for large amounts. All the language which emphasizes the wealth and importance of the plaintiff can be found in interrogatories propounded by his attorney. This calls for the application of the rule that a statement to the jury, otherwise objectionable, cannot be questioned when it has been invited. *Weinlander v. Volkman,* 153 Ill. App. 137.

Plaintiff also complains of the statement of counsel for defendant to the jury to the effect that plaintiff's property bore no portion of the cost of the Wacker drive improvement. This fact was testified to by Mr. Lyons, one of the witnesses for plaintiff, who said that ''this property was not assessed and paid no assessment.'' It thus became fair subject of comment.

Upon consideration of all the facts and circumstances shown by the evidence it cannot be said that the verdict is manifestly wrong, and as no errors occurred upon the trial which require a reversal, the judgment is affirmed.

*Affirmed.*

O'Connor, P. J., and Matchett, J., concur.