(No. 2598—

LAWRENCE F. RAU, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 22, 1939.*

MARKMAN, DONOVAN & SULLIVAN, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant is the owner of a tract of land situated on the east side of Halsted Street, between 136th Street (also known as Riverdale Road) and 138th Street, containing approximately 16.44 acres.

Such tract lies about six blocks south of the Little Calumet River which, at that point, is the southern boundary line of the City of Chicago, is immediately south of the right-of-way of the B. & O. Chicago Terminal Railway (hereinafter

referred to as the "Railway") ; is within the corporate limits of the Village of Riverdale, is about one mile from the City of Blue Island, two miles from the City of Harvey, and three-quarters of a mile from the I. C. Suburban Station. It has a frontage of approximately 1,300 feet on Halsted Street, and at the time of the making of the improvement hereinafter referred to, there was a gasoline filling station, an onion house, a garage, a barn, and some chicken houses thereon, all located near the northwest corner thereof.

Halsted Street as originally laid out ran due north and south past the claimant's property. 138th Street runs east and west on the Township line. At the intersection of Halsted Street with 138th Street, there was originally a jog to the west of about Two Hundred feet.

During the year 1927 the Highway Department of the respondent, in order to eliminate the right-angle turn at the intersection of 138th and Halsted Streets, re-routed certain portions of Halsted Street as it then existed, so that in going from north to south at a point about twelve feet north of the center line of 136th Street, the roadway curved to the west and proceeded in a southwesterly direction and joined the original Halsted Street again at 148th Street, at a point about 200 feet west of the original intersection. The new roadway was constructed at grade, and as a result of the change thus made, Halsted Street between 136th and 138th Streets had two branches, to wit, the original highway, which extended directly south to 138th Street, and the new curved highway which curved to the southwest and intersected 138th Street about 200 feet west of the first mentioned branch. Both branches joined at a point south of the Railway right-of-way, and crossed the railway tracks at grade.

Halsted Street, which is also known as Illinois Route No. 1, is one of the main north and south arterial highways in Cook County. It begins at Lake Michigan, about six miles north of Madison Street in the City of Chicago, and extends due south the entire length of the City, then proceeds through Riverdale, Harvey, Chicago Heights and Steger, to the County line.

During the year 1934 a viaduct was constructed over the Railway, and in 1935 the approaches thereto were completed, and the course of Halsted Street was again slightly modified.

The new roadway was slightly to the west of that branch of Halsted Street which was constructed in 1927.

After the construction of the viaduct the grade crossing of Halsted Street was closed and a barrier built across Halsted Street just south of the right-of-way line of the Railway.

The property on both sides of Halsted Street for practically its entire length through Chicago and the suburbs has been subdivided, with the exception of a small tract around 107th Street, another small tract near 111th Street, and the property immediately between the Rau property and the city limits of the City of Chicago.

The elevation of the viaduct at the center of 136th Street is 17½ feet above the level of the previous roadway, and the approach to such viaduct descends gradually in a southerly direction to a point 550 feet south of the center of 136th Street, at which point the elevation is substantially the same as it was prior to the construction of the improvement.

Claimant maintains that his property has been damaged for public use, without just compensation, and that under the provisions of Section 13 of Article II of the Constitution, he is entitled to compensation therefor in the amount of $50,000.00, and alleges in his brief that his claim for damages is based on the following items, to wit:

1. "The elevation of the roadway of Halsted Street in front of his property."

2. "The closing of the arterial public highway to which his property had immediate access and which added greatly to the value of his property."

Section 13 of Article II of the Constitution of 1870 provides that private property shall not be taken or damaged for public use without just compensation. The Constitution of 1848 provided that private property should not be taken for public use without just compensation, but made no provision for compensation in cases where private property was damaged but not taken. This resulted in hardship in numerous cases, and in order to remedy the situation, provision was made in the Constitution of 1870 requiring compensation to be paid for private property which was damaged but not taken for public use.

The legal questions involved in cases of this kind have been before our courts in numerous cases, and the underlying principles have been definitely established and determined. The following rules have often been announced and applied:

606

1. In considering what additional classes of cases the framers of the present Constitution intended to provide for, the rule is, that it was not the intention to reach every possible injury that might be occasioned by a public improvement; that to warrant a recovery it must appear there has been some direct physical disturbance of a right; either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.

> *Otis Elevator Co.* vs. *City of Chicago*, 263 Ill. 419-424.
> *City of Winchester* vs. *Ring*, 312 Ill. 544-552.
> *Illinois Power & Light Corporation* vs. *Talbott*, 321 Ill. 538.
> *Schuler* vs. *Wilson*, 322 Ill. 503.

2. The construction of a viaduct or embankment in a street, or a change of grade thereof, which obstructs or injuriously affects access to or egress from adjoining property, whereby the same is damaged, gives the owner a right to recover for the damages so sustained.

> *Rigney* vs. *City of Chicago*, 102 Ill. 64.
> *Chicago* vs. *Jackson*, 196 Ill. 496.
> *Chapman* vs. *City of Staunton*, 246 Ill. 394.
> *Barnard* vs. *Chicago*, 270 Ill. 27.

3. Any damage resulting to an abutting owner on account of the increase or diversion of traffic from the vicinity of his property is not such damage as entitles the owner to compensation therefor.

> *Hohmann* vs. *City of Chicago*, 140 Ill. 226-230.
> *City of Chicago* vs. *Spoor*, 190 Ill. 340-348.
> *City of Chicago* vs. *McShane*, 102 Ill. App. 239-243.
> *Cuneo* vs. *City of Chicago*, 292 Ill. App. 235-240.

4. Depreciation in market value will not sustain a claim for damages to land not taken unless such depreciation results from a cause which the law regards as a basis for damages.

> *Illinois Power & Light Corporation* vs. *Talbott*, 321 Ill. 538.
> *Rockford Electric Co.* vs. *Browman*, 339 Ill. 212.

5. The proper measure of damages in cases where property is damaged but not taken for public use, is the difference between the fair cash market value of the property unaffected by the improvement and the fair cash market value thereof as affected by it.

> *Brand* vs. *Union Elevator Co.*, 258 Ill. 133.
> *Dept. of Public Works* vs. *Caldwell*, 301 Ill. 242.
> *Dept. of Public Works* vs. *McBride*, 338 Ill. 347.

The difficulty in cases of this kind is not so much in determining the controlling principles of law, as in determining the facts in the case and applying the proper principles of law thereto.

Since 1930 claimant's land has been used for the purpose of raising onion sets, and prior to that time for the raising of asparagus.

Claimant called three real estate experts as witnesses, each of whom testified that the highest and best use to which the premises was adaptable at the time of the construction of the viaduct in question, was for subdivision purposes. Respondent called two real estate experts who testified that the highest and best use to which the premises was then adaptable was for industrial purposes. The experts on both sides testified as to the fair cash market value of the property prior to the making of the improvement and unaffected thereby, and its fair cash market value subsequent to the making of the improvement and as affected thereby.

The three expert witnesses for the claimant testified that in their opinion the property of the claimant was depreciated in value in the following respective sums, to wit: $33,850.00; $32,000.00; and $32,800.00. The claimant himself fixed the amount of such depreciation at $3,500.00 per acre.

One of the witnesses for the respondent fixed the amount of such depreciation at $3,000.00, and the other stated that in his opinion the property was worth as much after the making of the improvement as it was before.

In considering the opinions of the witnesses for the claimant as above set forth, the following facts must be borne in mind:

1. That there is a large amount of vacant property between claimant's property and the south corporate limits of the City of Chicago;—one of the witnesses for respondent having testified that "from 87th Street south to 130th Street, with the exception of some business stores in Pullman, it is approximately 95% vacant."

2. Such opinions were based in part upon the assumption, as testified by them, that as the result of the re-location of Halsted Street in 1927, the curve to the west commenced at a point approximately 500 feet south of the north line of claimant's property, whereas it appears from the plat in evidence and the testimony of the State Highway Engineer that the curve from the original Halsted Street commenced at a point twelve feet north of the center line of 136th Street.

3. Such opinions were based in part upon the assumption, as testified by them, that the elevation of the approach to the viaduct came down to grade approximately at or just north of 138th Street, whereas it appears from the plat in evidence and the testimony of the State Highway Engineer that at a point 550 feet south of the center line of 136th Street

the elevation was but two or three inches higher than the original pavement.

4. Such opinions were based in part upon the assumption, as testified by them, that the highest part of the elevation opposite claimant's property was about twenty-five feet above the old grade, whereas it appears from the plat in evidence and the testimony of the aforementioned Highway Engineer that the highest point of the elevation was seventeen and one-half feet above the old grade.

5. Any depreciation in the value of claimant's property, resulting from the re-location of 1927, cannot be considered in this proceeding as any claim therefor was barred prior to the filing of the complaint herein.

6. In considering the value of claimant's property for subdivision purposes both before and after the construction of the viaduct, claimant's witnesses considered the 16.44-acre tract as a whole. They stated, however, that they made no deduction for loss of valuation except for the Halsted Street frontage, but apparently they based their estimates on a frontage of approximately 1,300 feet, whereas the elevation of the highway as shown by the plat in evidence and the testimony of the State Highway Engineer, was limited to approximately the north 550 feet of such frontage.

The principal difference in the estimates of the several witnesses arises from the fact that the witnesses for claimant considered the property as subdivision property with business frontage on old Halsted Street, and valued it as such, while the witnesses for respondent considered the property as industrial property, and based their valuation upon such assumption.

We have carefully considered all of the evidence in the record, have made a personal inspection of the property in question, and are of the opinion that access to the property of the claimant has been obstructed and injuriously affected as the result of the construction of the viaduct in question; and that the property of the claimant has been depreciated in value as the result thereof; that the damages to the claimant's property as the result of elements properly considered in determining such damages, in accordance with the aforementioned principles of law, is the sum of Fifty-five Hundred Dollars ($5,500.00).

Award is therefore entered in favor of the claimant for the sum of Fifty-five Hundred Dollars ($5,500.00).